THERESA KOEHLER *vs.* MICHAEL CLEARY.

February 6, 1877.

New Trial—Misconduct of Jury.—In case of an application for a new trial, for misconduct of the jury, if it does not appear that the misconduct was occasioned by the prevailing party, or any one in his behalf, and if it does not indicate any improper bias upon the jurors' minds, and the court cannot see that it had, or might have had, an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside. If the moving party shows such misconduct that prejudice may have resulted to him from it, a new trial will be granted, unless the successful party shows that in fact such prejudice did not result.

Action for breach of promise of marriage and seduction. Trial in the district court for Winona county, before *Mitchell*, J., and verdict for plaintiff for $2,000. Motion for new trial because of newly-discovered evidence, misconduct of the jury, and excessive damages, upon which the court ordered that a new trial be had, unless plaintiff consent that the verdict be reduced to $650, in which case a new trial would be refused. The plaintiff duly consented to the reduction, and the defendant appealed from the order.

*Wilson & Taylor*, for appellant.

*W. H. Yale*, for respondent.

GILFILLAN, C J. There is no necessity to consider any

of the grounds upon which the motion for a new trial was made, except that of misconduct of the jury. Bearing on this point, it appears from the bill of exceptions that certain acts and conversations were testified to, as having occurred in certain rooms in the Green Bay House, the hotel at which the plaintiff lived, and which hotel was kept by plaintiff's sister; and that the testimony of these acts and conversations had a material bearing upon the case. These acts and conversations were denied, and it was claimed that, from the locality and position of the rooms, it was impossible that the witnesses testifying could have seen or heard such acts or conversations. The credibility of the witnesses, therefore, was in some measure affected by such locality and position. From the affidavits used on the motion—and which are not contradicted nor explained—it appears that five of the jurors who tried the cause, during the trial, and without leave of the court, went together to the Green Bay House and spoke to the bar-tender, who thereupon took the key of one of the rooms testified to, conducted them into it and closed the door, and they remained therein for some minutes. It appears that the bar-tender was a cousin or nephew of plaintiff, and had been a witness for her on the trial. What occurred in the room, after he and the jurors entered it, does not appear. It is evident that the jurors, conducted by a relative of, and a witness for, the plaintiff, made, without leave of court, or consent of defendant, an examination of the premises, and it is a fair presumption that they made it in order to test the credibility of the witnesses. That this was misconduct on the part of the jury is not denied, but it is denied that it is such misconduct as to vitiate the verdict.

The proper rule in such cases we deem to be that, if it does not appear that the misconduct was occasioned by the prevailing party or any one in his behalf, and if it does not indicate any improper bias upon the jurors' minds, and the court cannot see that it either had, or might have had, an

effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside. *Pettibone* v. *Phelps*, 13 Conn. 445. In this case, the fact that the plaintiff could easily have explained what was done and said (if anything) at the time of the jurors' visit, and have shown their misconduct to have been harmless (if it was harmless) and that she makes no attempt at such explanation, requires that every reasonable inference which the facts will justify should be made against her. It would be unreasonable to require that the defendant should show that he was in fact prejudiced. He would not be permitted to do this by the oaths of the jurors; he could not be expected to do it by the oath of her relative and witness, who was himself a party to the misconduct. The most that he can be called upon to do is to show that the misconduct may have had an effect unfavorable to him. That it may have had such unfavorable effect needs only a statement of the facts to show. The jurors evidently deemed the location and position of the rooms of sufficient importance, in their bearing on the case, to justify them in making an examination. The rooms were in her sister's house, in which she lived, and the examination was made under the guidance of her relative and witness, who may be assumed to have acted in her behalf, though perhaps not by her direct procurement; and it is impossible to say that such an examination, made under such circumstances, may not have had a considerable influence on the minds of the jurors, adverse to the defendant.

It is not sufficient, to obviate the probability of prejudice from such influence, that there was introduced in evidence a diagram of the premises, showing the location of the rooms. A diagram on paper might—and with most men would— have an effect very different from that caused by actual view of the premises.

Because of this misconduct there must be a new trial.

Order reversed and new trial ordered.